558 S.E.2d 298

**Laurel PROUDFOOT, Plaintiff Below, Appellee,**

v.

**DAN'S MARINE SERVICE, INC., a West Virginia Corporation, Defendant Below, Appellant.**

**Shore–Masters, Inc., A Minnesota Corporation, Defendant Below.**

No. 29291.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2001.

Decided Oct. 30, 2001.

Concurring Opinion of Justice Starcher Jan. 8, 2002.

David W. Frame, Clarksburg, West Virginia, for appellee.

Avrum Levicoff, Brown & Levicoff, Pittsburgh, Pennsylvania, for appellant.

MAYNARD, J.

Dan's Marine Service, Inc., the appellant and defendant below, appeals the July 27, 2000 order of the Circuit Court of Taylor County in which the circuit court denied the appellant's motion for a new trial. After reviewing the issue raised by the appellant, we reverse and remand.

## I.

## FACTS

On August 16, 1996, Laurel Proudfoot, the plaintiff below and appellee, was injured when she fell through the floating dock at the marina at Tygart Lake in Taylor County, West Virginia. The marina was operated by Dan's Marine Service, Inc., the defendant below and appellant.

Ms. Proudfoot subsequently filed a personal injury action against Dan's Marine Service. Liability was admitted, and a two-day trial was held on February 16 and 17, 2000, on the issues of causation and damages. After hearing the evidence, the jury returned a verdict for Ms. Proudfoot in the amount of $140,956.45. In its March 6, 2000 order, the circuit court entered judgment for Ms. Proudfoot in the amount of $143,387.39 which included pre-judgment and post-judgment interest.

Dan's Marine Service filed a motion for a new trial in which it alleged, *inter alia*, that one of the jurors, Olive Crow, had been convicted of a felony and was, therefore, disqualified from sitting on a jury pursuant to W.Va.Code § 52–1–8(b)(6). Subsequent hearings on the motion revealed that several years earlier Ms. Crow had pled guilty to one count of embezzlement. On the juror qualification form filled out by potential jurors prior to trial, Ms. Crow had answered "No" to the question "Have you ever been convicted of perjury, false swearing, or other infamous crime?" Further, Ms. Crow failed to reveal her felony conviction during *voir dire* when the circuit court inquired of the jury panel whether any of them had been convicted of a felony.[1] Dan's Marine Service asserted that Ms. Crow's statutory disqualification from serving as a juror automatically mandated the granting of a new trial.

---

1. Ms. Crow explained to the circuit court that she had pled guilty to embezzlement because she was offered probation and did not want to risk going to jail. According to Ms. Crow, authorities later arrested the person who had actually embezzled the money, and the trial judge informed her that, as a result, her conviction was sealed and was not a public record. Nevertheless, Ms. Crow stated that at the time she filled out the jury questionnaire and at the time of *voir dire* she knew that she had been convicted of a felony.

In its July 27, 2000 order denying Dan's Marine Service's motion for a new trial, the Circuit Court of Taylor County made the following findings of fact and conclusions of law:

First, the Court finds and concludes that Olive Crow, one of the jurors who was sworn and subscribed to the verdict in this matter, is and was at the time of jury selection ... and at the time of trial ... a convicted felon having been convicted by the Circuit Court of Randolph County for the felony offense of embezzlement.

Second, the Court finds that no agents, servants or employees of the defendant, Dan's Marine Service, Inc., including Dan Williams, appeared at jury selection, but that only counsel for the defendant appeared at jury selection.

Third, the Court finds that the juror, Olive Crow, on the initial juror qualification form marked that she had not ever been convicted of perjury, false swearing or any other infamous offense. The Court finds that such response on the juror qualification form was false.

Fourth, at the time of the general swearing of the jury, the Court went through each question on the juror qualification form, and specifically explained that the term "infamous offense" meant a felony. The Court inquired of the jury panel whether any of them had been so convicted. At that time, the juror Olive Crow either failed to answer or did not admit that she had been convicted of a felony. Therefore, the Court finds that she answered the Court's questions falsely.

Fifth, the Court finds and concludes that at the time of trial, Olive Crow was, in fact, disqualified from sitting on the jury in this case, or on any other jury in a civil case in West Virginia, in light of the statutory disqualification provided under West Virginia Code 52–1–8(d)(6) [sic].

Sixth, the Court finds based upon the testimony of witnesses who have appeared at the post verdict hearings in this matter, specifically the testimony of Dan Williams, that the defendant did not have knowledge of Olive Crow's felony conviction and con-sequent disqualification until the day after the trial in this matter.

. . .

Seventh ... the Court is of the opinion that such disqualification and false concealment by the juror is not in and of itself a sufficient basis to set aside the verdict and grant a new trial. Instead, the Court is of the opinion that under the current law the defendant must separately demonstrate actual prejudice. . . .

Eighth, the Court finds and concludes that ... the defendant has not otherwise shown substantial prejudice.

Dan's Marine Service now appeals this order.

## II.

### STANDARD OF REVIEW

■ This Court has held:

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syllabus Point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). Recently, we noted that in reviewing an order denying a new trial, we review "the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo." *Gum v. Dudley*, 202 W.Va. 477, 482, 505 S.E.2d 391, 396 (1997) *quoting* Syllabus Point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). With these standards in mind, we now turn to the issue before us.

## III.

### DISCUSSION

The appellant's position is that a verdict should be set aside and a new trial granted without any additional specific showing of prejudice when it is discovered that a juror is a convicted felon and lied to conceal the conviction. In support, the appellant argues, first, that our system of jurisprudence vests

so much trust and confidence in the jury that any substantial irregularity in the impaneling of the jury must require setting aside the verdict. Two, because of the constraints on investigating the deliberative process of juries, it is doubtful that a specific showing of prejudice could ever be made. Three, the guarantee of a trial by jury in Article III, Section 13 of the West Virginia Constitution presumably means six *qualified* jurors. Finally, cases in other jurisdictions clearly hold that when a disqualified juror lies to conceal the disqualification and subscribes to the verdict, a new trial is required.

In response, the appellee points to *State v. Bongalis*, 180 W.Va. 584, 378 S.E.2d 449 (1989), on which the circuit court based its ruling, which states the traditional West Virginia rule that before juror disqualification merits a new trial, it must appear that the complainant suffered injustice by reason of the disqualification. The appellee's primary argument is that no juror bias or prejudice has been shown in this case, nor is there any rational reason to infer prejudice. Second, the appellee opines that the appellant was allowed under the applicable rules to make a limited inquiry into the jury's decision but failed to do so. Finally, the appellee contends that the majority of other jurisdictions support the requirement of actual prejudice to set aside a jury verdict.[2]

The appellee is correct in asserting that traditionally this Court has required a showing of prejudice or harm to the complainant prior to setting aside a verdict due to alleged juror disqualification. This rule was stated early on in Syllabus Point 1 of *Flesher v. Hale*, 22 W.Va. 44 (1883):

It is the settled law of this State, in both criminal and civil trials, that the verdict of a jury will not be set aside for objections to jurors, on grounds which existed *before* they were sworn, unless it appears that by reason of the existence of such grounds the party objecting has suffered wrong or injustice; and the ignorance of the parties of the existence of such grounds until after verdict is immaterial.

*See also,* Syllabus Point 17, *Sweeney v. Baker*, 13 W.Va. 158 (1878), *overruled in part on other grounds by Bailey v. Charleston Mail Ass'n*, 126 W.Va. 292, 27 S.E.2d 837 (1943), ("A new trial will not be granted, because a juror is alleged to have made up his mind on the merits of the case, before he was called on the jury; unless it appears from the whole case, that the party seeking the new trial suffered injustice from the fact, that such

---

2.  We have reviewed the cases from other states presented by the parties as well as those which our own research uncovered concerning whether a new trial is granted when it is discovered after trial that a juror was a convicted felon and concealed it during *voir dire*. Basically, both parties can find support for their respective positions. *See e.g., Firestone v. Freiling*, 22 Ohio Op.2d 356, 188 N.E.2d 91 (1963) (order granting new trial reversed where it was found that juror's concealment of conviction was in good faith and there was nothing to show that juror was biased); *Young v. United States*, 694 A.2d 891 (D.C.1997) (denial of new trial affirmed because juror's felony conviction does not constitute prejudice *per se* meriting automatic reversal, and juror's failure to disclose his status was not deliberate); *Perez v. State of Texas*, 41 S.W.3d 712 (Tex.Cr.App.2001) (because juror's felony conviction constitutes a statutory disqualification that was not discovered until after the verdict was entered, complainant must show significant harm by the service of the disqualified juror); and *Froede v. Holland Ladder & Manufacturing Company*, 207 Mich.App. 127, 523 N.W.2d 849 (1994) (court notes that opinion does not stand for the proposition that prejudice will always be found when a convicted felon makes a misrepresentation on a juror questionnaire or at *voir dire*). But see, State of Louisiana v. Baxter, 357 So.2d 271 (La.1978) (a new trial will be granted when party shows that juror was disqualified, answered falsely on *voir dire*, and complaining party exercised due diligence); *State of Missouri v. Martinelli*, 972 S.W.2d 424 (Mo.Ct.App.1998) (a new trial is merited where the basis for disqualification is investigated during *voir dire*, complaining counsel does not have knowledge of the juror's deception, and the juror's concealment of the truth is intentional); *Thomas v. State of Texas*, 796 S.W.2d 196 (Tex.Crim.App.1990) (when juror is absolutely disqualified, no showing of harm is necessary); *Gann v. State of Oklahoma*, 1964 Okla.Crim. 122, 397 P.2d 686 (1964) (new trial merited where juror stood mute and failed to respond to question whether he had ever been convicted of a felony); and *Noble Trucking Company v. Payne*, 664 So.2d 202 (Ala. 1995) (new trial was warranted where juror was asked about conviction and failed to respond). Generally, these cases contain a plethora of rationales and often rely upon statutes or rules of procedure that may be unique to that particular state. Therefore, they are of limited assistance in deciding the issue in this case.

juror served"); *Malone v. Monongahela Valley Traction Co.,* 105 W.Va. 60, 141 S.E. 440 (1928) (affirming denial of a new trial where two jurors were alleged to be incompetent, one because of bias and partiality and the other because of a relationship with the plaintiff); *Watkins v. Baltimore & O.R. Co.,* 130 W.Va. 268, 43 S.E.2d 219 (1947) (reversed trial court's grant of new trial where complainant's affidavit, alleging that a juror was an employee of the defendant, was found to be deficient because it did not show prejudice to the plaintiff); Syllabus Point 13, *State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1966) (holding that "[e]ven if a petit juror served on the jury which convicted a defendant and also had served on the grand jury which had indicted him, the verdict of the jury will not be set aside on motion of the defendant after the verdict if it appears that the ·defendant had a fair and impartial trial"); *Beck v. Thomson,* 31 W.Va. 459, 7 S.E. 447 (1888), *overruled in part on other grounds by Mayer v. Frobe,* 40 W.Va. 246, 22 S.E. 58 (1895), (affirming the denial of a new trial where a juror was disqualified under W.Va. Code § 56–6–14 because he had a case pending in the same court scheduled for trial during the same term); and *Garrett v. Patton,* 81 W.Va. 771, 95 S.E. 437 (1918) (reversing the trial court's grant of a new trial where defendant was a member of the petit jury in attendance at the term of the court during which his case was tried, and had served as a juror with some, if not all, of the jurors who tried his case).[3]

In *State v. Bongalis, supra,* the defendant challenged his second-degree murder conviction after discovering several months after his trial that one of the jurors had been convicted of a felony and was, therefore, statutorily disqualified from serving. On appeal, the defendant argued that the verdict should be set aside and a new trial awarded

because of the disqualified juror. This Court based its decision to affirm the conviction on the rule stated in Syllabus Point 9 of *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951) which provides:

The general rule, inhibiting allowance of a new trial for matter constituting a principal cause of challenge to a juror, existing before the juror was elected and sworn, unknown to the complaining party until after verdict, not disclosed on a thorough *voir dire* examination, and undiscoverable by the exercise of ordinary diligence, unless it appears from the whole case that the complainant suffered injustice by reason of the disqualification; applies in criminal cases. (Citation omitted.)

The Court, however, did not hinge its decision on whether the defendant suffered injustice. Instead, the Court found that the defendant was foreclosed from attacking the verdict because he had not inquired of the jury panel as to whether any member had been convicted of a felony.

▮ In the instant case, in contrast, the circuit court asked whether any member of the jury panel had been convicted of a felony, and Ms. Crow concealed her conviction. Therefore, we are now faced squarely with the issue of whether the traditional rule that mandates a showing of harm as a result of juror disqualification should be applied where there is both a statutory disqualification due to a felony conviction *and* concealment of the conviction during *voir dire*. We believe that the traditional rule requiring a showing of wrong or injustice should not apply.

▮ W.Va.Code § 52–1–8(b)(6) (1993) clearly provides that "[a] prospective juror is disqualified to serve on a jury if the prospective juror ... [h]as been convicted of perjury, false swearing or other infamous offense."[4] We stated in Syllabus Point 6 of

---

**3.** *See also, State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9 (1951); *State v. Harris,* 69 W.Va. 244, 71 S.E. 609 (1911); *State v. Kilpatrick,* 158 W.Va. 289, 210 S.E.2d 480 (1974); and *State v. Jones,* 128 W.Va. 496, 37 S.E.2d 103 (1946).

**4.** This Court has recognized both common law and statutory grounds for the disqualification of jurors. Common law grounds for the disqualification of a juror include:

(1) Kinship to either party within the ninth degree; (2) was arbitrator on either side; (3) that he has an interest in the cause; (4) that there is an action pending between him and the party; (5) that he has taken money for his verdict; (6) that he was formerly a juror in the same case; (7) that he is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him; and

*State v. Bongalis* that "[a] felony is an 'infamous crime' as it is punishable by imprisonment in the State penitentiary." Therefore, it is plain that W.Va.Code § 52–1–8(b)(6) disqualifies convicted felons from serving on juries. The obvious purpose of W.Va.Code § 52–1–8(b)(6) is to ensure that juries consist of law abiding citizens of approved integrity, good character, and sound judgment who are most likely to perform their jury service with the proper respect for the law, to fairly try the facts, and to render impartial verdicts. We believe that the traditional rule fails to give adequate effect to the significant intent and purpose of W.Va.Code § 52–1–8(b)(6).

■ Accordingly, we hold that a new trial is required when it is discovered after trial that a juror who voted on the verdict is statutorily disqualified under W.Va.Code § 52–1–8(b)(6) because the juror has been convicted of a felony; the juror concealed the felony conviction during *voir dire* in response to the specific inquiry whether any of the prospective jurors were convicted felons; and the disqualification was undiscoverable by the exercise of ordinary diligence. The complaining party is not required to show that it suffered wrong or injustice as a result of the convicted felon's presence on the jury. To the extent that *Flesher v. Hale,* 22 W.Va. 44 (1883), and its progeny are inconsistent, they are expressly overruled.

■ We emphasize that in order to receive a new trial, a party challenging a verdict based on the presence of a juror disqualified under W.Va.Code § 52–1–8(b)(6) must show that a timely objection was made to the disqualification or that ordinary diligence was exercised to ascertain the disqualification. This Court's oft-repeated "raise it or waive it" rule is applicable.

Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. Recently, we stated in *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996): "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace."

*State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996). This is consistent with W.Va.Code § 56–6–16 (1923) which says that "[n]o irregularity in ... the drawing, summoning, or impaneling of jurors, shall be sufficient to set aside a verdict, unless objection specifically pointing out such irregularity was made before the swearing of the jury[.]" Further, W.Va.Code § 56–6–15 (1923) provides that "[n]o exception shall be allowed against a juror, after he is sworn upon the jury, on account of his age or other legal disability, unless by leave of court." Finally, we have recognized that "where there is a recognized statutory or common law basis for disqualification of a juror, a party must during voir dire avail himself of the opportunity to ask such disqualifying questions. Otherwise the party may be deemed not to have exercised reasonable diligence to ascertain the disqualification." *State v. Bongalis,* 180 W.Va. at 591, 378 S.E.2d at 456.

■ Further, under the ordinary diligence standard, it is not enough to show that the circuit court failed to ask the questions which likely would have revealed the disqualification. A party must ensure that the trial court examines the jury panel concerning a possible disqualification, or the party itself must ask the relevant questions. According to W.Va.Code § 56–6–12 (1923):

causes of the same class or founded upon the same reason should be included.
*State v. Dushman,* 79 W.Va. 747, 749, 91 S.E. 809, 810 (1917). In addition there are several statutes pertaining to juror disqualification. These include W.Va.Code § 56–6–12 (1923) (jurors who are not indifferent to the issues in the case by reason of bias or prejudice are disqualified); W.Va.Code § 56–6–14 (1923) ("No person shall serve as a juror at any term of a court during which he has any matter of fact to be tried by a jury, which shall have been, or is expected to be, tried during the same term");

W.Va.Code § 61–5–3 (1923) ("A person convicted of perjury or subornation of perjury ... and a person convicted of false swearing ... shall be adjudged forever incapable ... of serving as a juror"); W.Va.Code § 61–6–12 (1923) (disqualifies from serving as a juror in prosecutions for crimes against property or persons while participating in a mob or riotous assemblage, those who have themselves committed such crimes or have expressed an opinion in favor of such crimes); and W.Va.Code § 52–1–8 (1993) with which we are concerned in the instant case.

Either party in any action or suit may, and the court shall on motion of such party, examine on oath any person who is called as a juror therein, to know whether he is a qualified juror, or is related to either party, or has any interest in the cause, or is sensible of any bias or prejudice therein[.]

This Court said in *W.Va. Human Rights Commission v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 355, 211 S.E.2d 349, 353 (1975), that *"[v]oir dire* examination is designed to allow litigants to be informed of all relevant and material matters that might bear on possible disqualification of a juror and is essential to a fair and intelligent exercise of the right to challenge either for cause or peremptorily." Our law is clear that the parties to a trial are responsible for conducting a full and complete *voir dire* during which, if the prospective jurors are forthright, all relevant and meaningful information will be revealed which is necessary for the impaneling of a qualified jury. Therefore, a party cannot simply sit back and invite error because of a juror's disqualification.

Applying this rule to the instant case, it is undisputed that Ms. Crow had been convicted of a felony and that she concealed this fact on both the juror qualification questionnaire and during *voir dire* when the circuit court specifically asked whether any of the prospective jurors had been convicted of a felony. Also, there is no reason to believe that the appellant knew of or failed to exercise ordinary diligence to discover Ms. Crow's felony conviction. Lacking knowledge to the contrary, it was reasonable for the appellant to rely upon Ms. Crow's silence when the circuit court made its specific inquiry.[5] The relevant question was asked by the circuit court, and nothing more could be done. Therefore, we find that a new trial is warranted in this case.

In closing, we note that this Court is not unsympathetic to the appellee. Through ab-solutely no fault of her own, Ms. Proudfoot's verdict is set aside, and she must again bear the significant burden, including the substantial expense, of a trial. However, this Court is charged in this case with weighing the finality of the verdict against the plain legislative intent that juries are served by jurors whose moral status has never been judicially established as criminal. We find that the scales tip in favor of the latter consideration.

## IV.

## CONCLUSION

For the reasons stated above, we reverse the July 27, 2000 order of the Circuit Court of Taylor County which denied the appellant's motion for a new trial, and we remand for proceedings consistent with this opinion.

Reversed and Remanded.

STARCHER, J., concurring:

(Filed Jan. 8, 2002)

I concur with the majority opinion in the instant case—if a juror has a prior felony conviction and conceals that conviction from the parties during *voir dire*, the jury's subsequent verdict is suspect and must be set aside.

I am troubled, however, by fact that this case does not comport with our recent case law regarding flaws in the composition of a jury. The result is that money and property are receiving more protection than the right of a citizen to liberty and freedom.

In *State v. Lightner*, 205 W.Va. 657, 520 S.E.2d 654 (1999), we held that it was *not* reversible error for a circuit court to allow an alternate, thirteenth juror to participate and vote with the regular jury panel in a criminal case. We specifically rejected a *per se* rule, one that would require automatic reversal, and adopted a discretionary rule for the following reason: "Each case must be decided

---

**5.** The appellee argues that the appellant waived his right to now complain about the disqualified juror because neither the appellant nor its local counsel attended *voir dire* (the appellant's lawyer who conducted the trial is from Pittsburgh, Pennsylvania). We disagree. The circuit court found in its final order that the appellant did not have knowledge of Ms. Crow's felony conviction until the day after the trial, and that there was no waiver of the issue of Ms. Crow's disqualification. Nothing in the record indicates to us that the circuit court's findings are incorrect.

on its own unique set of facts." 205 W.Va. at 660, 520 S.E.2d at 657.

The instant case adopts, for purposes of civil cases, a *per se* rule and rejects any consideration of a case's unique set of facts.

As I read the majority's opinion, we have created competing rules for juries in criminal and civil cases which are backwards. In civil cases, such as the one at bar, we should require a party to demonstrate that a problem with a juror caused prejudice before a verdict will be set aside—and not have a *per se* rule as adopted by the majority opinion. Conversely, in criminal cases, where the liberty interests of people are at stake, a *per se* rule for addressing problems with jurors should be adopted.

Reading the majority's opinion together with *State v. Lightner*, the average citizen can only conclude that this Court is willing to protect, through absolute rules, the pocketbooks of defendants from injured plaintiffs, but is not willing to protect a criminal defendant's right to be considered innocent until found guilty by an impartial jury of his peers. I do not believe this is the message this Court should be sending to the public.

I also believe that the majority's opinion may lead to substantial, post-trial litigation over juror qualifications. Another message that can be divined from the majority opinion is that, if a defendant is hit with a major monetary verdict, every aspect of every juror's life should be scrutinized. Under the majority's opinion, any misstep in a juror's past could become fodder to reverse a hard-fought jury verdict. I do not believe the majority intended this outcome.

I agree with the majority's opinion with some trepidation. However, while the majority's opinion is a sound interpretation of our statutes, I believe that this Court's pronouncements, regarding how courts should address flaws in the composition of a jury, should be readdressed and clarified.

I therefore respectfully concur. I am authorized to state that Justice ALBRIGHT joins in this concurrence.